IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U S D C Atlanta
APR 11 2005
LUTHER D. THOMAS, Clerk
By _____ Deputy Clerk

MICHAEL KATKA,

    Plaintiff

VS

TERRY MILLS, ROBERT BROWN,
LISA CALLAHAN, WILLIAM WALL,
GEORGE HERRIN, DAN KIRK,
and DAWN DIEDRICK,

    Defendants

CIVIL ACTION

FILE NO _____

1 05-CV 954

-JOF

## COMPLAINT FOR DAMAGES

COMES NOW the plaintiff, by and through his undersigned counsel, and shows the Court the following in support of his complaint for damages

### PARTIES AND JURISDICTION

1    Plaintiff is a resident of Gwinnett County, Georgia

2    Defendant Terry Mills is a resident of the State of Florida and will be served with process there

3    Defendant Robert Brown is a resident of the State of Georgia and may be served with process at GBI headquarters in Decatur, Georgia

4.    Defendant Lisa Callahan is a resident of the State of Georgia and may be served with process at GBI headquarters in Decatur, Georgia

5    Defendant William Wall is a resident of the State of Georgia and may be served with process of service at GBI headquarters in Decatur, Georgia

6    Defendant George Herrin is a resident of the State of Georgia and may be served with process by service at the GBI headquarters in Decatur, Georgia

7       Defendant Dawn Diedrick is a resident of the State of Georgia and may be served with process by service at GBI headquarters in Decatur, Georgia

8       Defendant Dan Kirk is a resident of the State of Georgia and may be served with process by service at GBI headquarters in Decatur, Georgia

9.      The Court has jurisdiction over this action pursuant to 28 U.S C § 1331

10      Venue is proper in this Court pursuant to 28 U.S C § 1391(b)  Venue in this division is proper pursuant to L L.3.1(b), N D Ga

## OPERATIVE FACTS

11      On September 1, 2000, plaintiff was driving his vehicle on Georgia Highway 141 in Fulton County, Georgia

12      As plaintiff was driving his vehicle, a vehicle traveling in the other direction went out of control, crossed the median, and struck his vehicle.

13.     All four occupants of the other vehicle were killed as a result of the collision

14      Although plaintiff was charged with no other traffic offense, law enforcement personnel took a sample of his blood for forensic alcohol testing by or under the supervision of the defendants at the GBI crime lab

15      Plaintiff's blood was tested for alcohol content by or under the supervision of the defendants and on October 3, 2000, an official report was issued stating that plaintiff's blood alcohol was .12 grams per 100 milliliters, above the limit permitted by law

16      Based on the forensic evidence provided by or under the supervision of the defendants, plaintiff was prosecuted for a per se violation of Georgia's DUI laws

17      Plaintiff actually contested the accuracy and validity of the GBI blood test results as part of his defense to the prosecution.

18      Plaintiff's counsel, in defending him against the charges, properly

requested disclosure of all scientific test reports and all exculpatory evidence

19. Only the test reports showing plaintiff's blood alcohol content to be above the legal limit were provided by the defendants

20. In October of 2000, the crime lab discovered an incident of sample switching on the head space chromatographs used to determine blood alcohol content of submitted forensic samples

21. Similar instances of sample switching were noted on similar machines throughout the State of Georgia

22. As a result of the instances of sample switching, all blood alcohol testing throughout the State of Georgia were shut down for a period of time

23. The sample switching problem was not corrected until the manufacturer of the head space chromatographs replaced a part on all of the machines

24. The switching problem resulted in the inaccurate reporting of blood alcohol results on forensic samples of blood

25. Because of the switching problem, the official report of the blood alcohol content of plaintiff's blood was scientifically invalid.

26. The defendants failed to report to any prosecutorial or law enforcement officials, and particularly the prosecutorial and law enforcement officials involved in the prosecution of plaintiff, of the existence of the switching problem at the time that it was occurring

27. The defendants, individually and in conspiracy with one another, determined to hide the switching problem by issuing an executive summary report claiming that the problem was limited to one technician on one machine.

28. Plaintiff's blood alcohol was analyzed by the technician blamed by the defendants in their executive summary report.

29. No report was made to law enforcement officials or prosecutorial officials that the technician involved in plaintiff's prosecution was not competent

to operate the head space chromatograph machinery upon which his prosecution was based

30  No report was made to law enforcement, prosecutorial, or court officials of the full information concerning sample switching and its effect on the accuracy and validity of the tests on Plaintiff's blood

31  Due to the inability to support his contest of the accuracy and validity of the GBI blood test results, Plaintiff entered a plea of nolo contendere to the per se DUI charge on April 9, 2003

## LIABILITY  VIOLATION OF 42 U S C. § 1983

32  Each of the defendants had actual knowledge of the switching problem and the consequent scientific invalidity of the report of plaintiff's blood alcohol concentration.

33.  Each of the defendants was aware that the state was legally obligated to provide notice to the defendant of the scientific invalidity of the forensic test of his blood.

34  The defendants agreed and conspired among themselves, and the defendants knowingly allowed and instructed their employees to hide the scientific invalidity of the forensic tests of plaintiff's blood and the switching problem in general

35  The defendants agreed and conspired among themselves, and the defendants with managerial authority instructed their employees, to testify to the accuracy of the testing equipment despite the existence of the switching problem

36  When deposed in a civil action arising out of the collision in which Plaintiff was involved, the technician who performed the GBI test of Plaintiff's blood was instructed to testify that the testing machinery had all of its parts properly attached as prescribed by the manufacturer and in good working order, to the best of her knowledge

37  In addition to agreeing and conspiring among themselves, each of

-4-

the defendants also failed to comply with his or her individual duty to report the exculpatory information represented by the switching problem

38  Each of the defendants had actual knowledge that the information concerning the sample switching could be used by plaintiff to defend against the DUI charges against him

39  The defendants, individually and in combination with one another, failed to fully disclose the existence of the sample switching problem to the court, the prosecutor, or plaintiff with the knowledge that the information about the sample switching problem could not be obtained from any other source.

40  Defendants, individually and in combination with one another, withheld the full information concerning the sample switching problem from the court, the prosecutor, and the plaintiff with knowledge that doing so would prevent plaintiff from identifying and calling as witnesses those persons who could establish the switching problem

41  By intentionally withholding information specifically and generally requested by plaintiff, which was exculpatory evidence in relation to the charges on which plaintiff was prosecuted, defendants, individually and in combination with one another, deprived plaintiff of his constitutional rights under the Sixth Amendment to compel the attendance of witnesses to testify on his behalf

42  By intentionally withholding information of an exculpatory nature, defendants, individually and in combination with one another, deprived Plaintiff of his constitutional rights under the Fourth Amendment to due process of law.

43  As a result of the deprivation of his constitutional rights, plaintiff is entitled to recover compensatory damages

44  Plaintiff is entitled to recover punitive damages for the defendants' intentional and malicious deprivation of his constitutional rights

45  Pursuant to 42 U S C § 1988, plaintiff is entitled to recover his attorney's fees and expenses in litigation

WHEREFORE, plaintiff prays that he have a trial by jury and a verdict and judgment against the defendants in such sum as may be determined by the jury to constitute just and adequate compensation in the circumstances

J. Edward Staples
State Bar No. 675581

P.O. Box 460
Cornelia, GA 30531
(706) 894-3345
eddiestaples@yahoo.com

Gus McDonald
State Bar No. 488795

McDonald & Cody, LLC
P.O. Box 396
Cornelia, GA 30531
(706) 778-7178
gmcd@hemc.net