IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHAEL KATKA,                          :
                                        :
            Plaintiff,                   :
                                        :
v.                                      :        CIVIL ACTION NO.
                                        :        1:05-CV-0954-JOF
TERRY MILLS, et al.,                    :
                                        :
            Defendants.                  :


## OPINION AND ORDER

This matter is before the court on Third-Party Defendant Jennifer Hollstrom's motion to dismiss [18-1].

I.     **Background**

       A.     **Procedural History**

       Plaintiff, Michael Katka, filed suit against Defendants, Terry Mills, Robert Brown, Lisa Callahan, William Wall, George Herrin, Dan Kirk, and Dawn Diedrich, on April 11, 2005, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights during his prosecution for driving under the influence.   Plaintiff seeks compensatory and punitive damages, as well as attorney's fees pursuant to 42 U.S.C. § 1988.   Defendants are employees of the Georgia Bureau of Investigation.   Defendants filed a Third-Party Complaint against

Jennifer Hollstrom, a former employee of the Georgia Bureau of Investigation, on June 8, 2005. Third-party Defendant Hollstrom then filed the instant motion to dismiss.

**B.    Facts**

On September 1, 2000, Plaintiff was driving on Georgia Highway 141 in Fulton County, Georgia. *See* Cmplt., ¶ 11. A vehicle traveling in the other direction spun out of control and struck Plaintiff's vehicle. *Id.*, ¶ 12. All four occupants of the other vehicle were killed. *Id.*, ¶ 13. Although he was not charged with any traffic violation, law enforcement personnel took a blood sample from Plaintiff for testing. *Id.*, ¶ 14. Plaintiff's blood was tested by or under the supervision of Defendants, and on October 3, 2000, an official report was issued which stated Plaintiff had a blood alcohol level of .12 grams per 100 milliliters, above the legal limit. *Id.*, ¶ 15. Based on this evidence, Plaintiff was prosecuted for a per se violation of Georgia's driving under the influence laws. *Id.*, ¶ 16. As part of his defense, Plaintiff contested the results of the blood alcohol testing. *Id.*, ¶ 17. Plaintiff's criminal defense counsel requested all testing results, but only the reports of Plaintiff's blood alcohol level were produced. *Id.*, ¶¶ 18-19.

In October 2000, the crime lab discovered "an incident of sample switching on the head space chromatographs used to determine blood alcohol content of submitted forensic samples." *Id.*, ¶ 20. Similar instances of switching were noticed on other machines. *Id.*, ¶ 21. As a result, all blood alcohol testing in Georgia was temporarily halted while the manufacturer corrected the problem. *Id.*, ¶¶ 22-23. The "switching problem" caused the official report of

2

Plaintiff's blood alcohol content to be invalid.  *Id.*, ¶ 25.  Defendants did not report the existence of the "switching problem" at the time it was happening to "any prosecutorial or law enforcement officials."  *Id.*, ¶ 26.  Defendants, in conspiracy, attempted to hide the situation by issuing an executive summary report which stated that the problem was limited to one technician on one machine.  *Id.*, ¶ 27.  Plaintiff's blood sample was tested by the individual technician blamed in the executive summary report.  *Id.*, ¶ 28.  Because Plaintiff had no evidence to challenge the validity of the blood testing, however, he entered a plea of nolo contendere on April 9, 2003.  *Id.*, ¶ 31.

During a civil suit involving the automobile accident, the technician "was instructed to testify that the testing machinery had all of its parts properly attached as prescribed by the manufacturer and in good working order, to the best of her knowledge."  *Id.*, ¶ 36.

> Plaintiff alleges:
>
> by intentionally withholding information generally and specifically requested by plaintiff, which was exculpatory evidence in relation to the charges on which plaintiff was prosecuted, defendants, individually and in combination with one another, deprived plaintiff of his constitutional rights under the Sixth Amendment to compel the attendance of witnesses to testify on his behalf.

*Id.*, ¶ 41.  Defendants also deprived Plaintiff of his Fourth Amendment rights to due process. *Id.*, ¶ 42.

Jennifer Hollstrom is a former employee of the Georgia Bureau of Investigation who worked as a laboratory scientist with the Forensic Toxicology Section of the Division of Forensic Scientists.  *See* Third-Party Cmplt., ¶ 5.  Hollstrom performed the testing on

3

Plaintiff's blood sample for the presence of alcohol. *Id.*, ¶ 6. Hollstrom prepared an official report stating that Plaintiff's blood alcohol level was .12 grams per 100 milliliters, above the legal limit. *Id.*, ¶ 7. Third-Party Plaintiffs allege that Plaintiff's constitutional injury, if any, was caused by the acts of Hollstrom. *Id.*, ¶ 8. Therefore, the Third-Party Plaintiffs seek contribution and/or indemnification from Hollstrom. *Id.*, ¶ 9.

###    C.    Contentions

Third-Party Defendant Hollstrom files the instant motion to dismiss the Third-Party Complaint contending that the Defendants have failed to state a federal claim against her because there is no recognized right of contribution under § 1983 or federal common law. Furthermore, Hollstrom argues, even under common law contribution, there is no right to contribution among those who commit intentional torts, as alleged by Plaintiff here. In the alternative, if Defendants have stated a federal claim, Hollstrom contends it is barred by the doctrine of qualified immunity and Defendants' state law claims are barred by the Georgia Tort Claims Act.

Defendants respond under their theory of complaint, Hollstrom was the lab scientist who operated the head space chromatograph machine described in Plaintiff's complaint and that the sample switching that occurred was due to operator error committed by Hollstrom. Thus, if anyone had a constitutional duty to disclose the information, Hollstrom had the "primary" duty. Defendants further aver that "intent" is not an element of Plaintiff's § 1983 claims and therefore cannot bar Defendants' contribution allegations. Finally, Defendants

contend that Hollstrom's qualified immunity argument does not vitiate their complaint against her because either they, with Hollstrom, are all entitled to qualified immunity or they all are not.

## II.     Discussion

As an initial matter, the court disagrees with Defendants' characterization of the case. As the court understands the allegations in both the complaint and the third-party complaint, Hollstrom was the lab scientist who improperly screened Plaintiff's blood sample.   If the allegations in Plaintiff's complaint were limited to this misstep alone, the court might agree with Defendants that their fate was the same as Hollstrom's.   However, as described by the court above, Plaintiff's complaint does not allege any injury as a result of the invalid test alone; rather, Plaintiff's complaint alleges that Defendants – as employees of the Georgia Bureau of Investigation – became aware of Hollstrom's error and then conspired to suppress it.   Plaintiff alleges that Defendants' intentional withholding of the information from law enforcement officials and prosecutors and intentional misrepresentation of the scope of the problem in an executive summary report of the matter violated his Sixth Amendment rights to compel witnesses to testify in his defense.

Defendants' Third-Party Complaint against Hollstrom does not allege at all that she was involved in this alleged conspiracy to suppress the truth about the testing machines. Rather, it simply alleges that she was the scientist who prepared a faulty blood alcohol report. Thus, to the extent Plaintiff has a Sixth Amendment claim – and the court makes no comment

as to the viability of that claim – it exists wholly apart and separate from Hollstrom's acts. Similarly, Plaintiff's Fourth Amendment claim also rests on Defendants' alleged conspiracy to cover up the problems at the crime lab.  Plaintiff alleges that his sample was tested in October 2000, but he did not plead nolo contendere until April 9, 2003, a gap of two and a half years.   Presumably, Plaintiff theorizes that Defendants' coverup resulted in a substantial delay in the true facts coming to light, and that if the true facts had emerged earlier, he would never have been forced to plead nolo contendere.  Again, the court makes no comment as to the ultimate success of this theory or issues of causation, but the court must accept the facts and theories of Plaintiff's complaint on a motion to dismiss.  Here, it is far from clear that Third-Party Defendants are accused of the same wrongdoing that they allege against Hollstrom, and thus, contribution would not seem applicable.  *See Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77, 87-88 (1981) (a "right to contribution is recognized when two or more persons are liable to the same plaintiff *for the same injury* and one of the joint tortfeasors has paid more than his fair share of the common liability") (emphasis added).

In any event, the clear weight of authority goes against a court's locating a right of contribution in a § 1983 action.  The Supreme Court first considered whether there existed a federal statutory or common-law right to contribution in *Northwest Airlines*.  There, the Court considered the claims of female flight attendants who asserted that the airline violated their rights under the Equal Pay Act and Title VII.  The airline brought an action for contribution against the flight attendants' union as signatories to a collective bargaining

6

agreement which the airline argued set out pay rates by union contract.   The Supreme Court first noted that at "common law there was no right to contribution among joint tortfeasors," but that most states have altered the common law either by statute or judicial decision.   *Id.* at 86-87.   The Court then assumed that all of the elements of a contribution claim were present. *Id.* at 88-89.

The Court then determined that a right of contribution could be created in the Equal Pay Act or Title VII themselves (either expressly or through an implied cause of action), or a cause of action for contribution could have become part of the federal common law.   *Id.* at 89. With respect to the Equal Pay Act and Title VII, the Court considered "the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing state remedies."   *Id.* at 91.   The Court did not find it dispositive that there was no express right to contribution in either statute, particularly if the language of the statutes indicates that they were enacted for "the special benefit of a class of which petitioner is a member."   *Id.* at 92. The Court then looked to the statutory schemes established in the acts and found "express provisions for private enforcement in certain carefully defined circumstances."   *Id.* at 93. "The comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies."   *Id.* at 93-94.   Finally, the Court also determined that the legislative histories of the acts did not support a right of contribution. *Id.* at 94.

7

Finding no express or implied right to contribution in the Equal Pay Act or Title VII, the Court moved on to consider when a right to contribution could be found in the federal common law.  *Id.* at 95.   The Court noted that federal common law is generally limited to cases of uniquely federal concern, such as the resolution of interstate controversies or admiralty, and that no general federal right to contribution has been recognized.  *Id.* at 95-97. The Court found that in light of the comprehensive nature of the Equal Pay Act and Title VII, it would be particularly inappropriate for the Court to craft a judicially-recognized right to contribution under the common law.  *Id.*   Later the same term, building on *Northwest Airlines*, the Court held in *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981), that there was no right to contribution under federal antitrust statutes, nor would the Court locate a right to contribution in the federal common law under these circumstances.

Prior to *Northwest Airlines*, the Third Circuit in *Miller v. Apartments & Homes of New Jersey, Inc.*, 646 F.2d 101 (3d Cir. 1981), held that there was a right to contribution regarding the settlement of plaintiffs' § 1982 claims that defendants denied them leases to an apartment on the basis of race.  *Id.* at 108-10.   However, the reasoning of *Miller* is contradicted by that set forth in *Northwest Airlines*, and, thus, the court finds it of limited value here.[1]

---

[1]The court notes that the Third Circuit, itself, upon remand after *Northwest Airlines*, vacated its previous decision finding a right of contribution under federal law in Title VII cases.  *See Glus v. G.C. Murphy Co.*, 629 F.2d 248 (3d Cir. 1980), *vacated and remanded sub nom. Retail Wholesale & Dept. Store Union v. G.C. Murphy Co.*, 451 U.S. 935 (1981).

8

In fact, most cases decided since *Northwest Airlines* have held that there is no right to contribution under § 1983. *See, e.g.*, *Hepburn v. Athelas Institute, Inc.*, 324 F. Supp. 2d 752 (D. Md. 2004); *Wright v. Reynolds*, 703 F. Supp. 583, 592 (N.D. Tex. 1988); *Gray v. City of Kansas City*, 603 F. Supp. 872, 875 (D. Kan. 1985); *Banks v. City of Emeryville*, 109 F.R.D. 535, 539 (N.D. Cal. 1985); *TCI Cablevision v. City of Jefferson*, 604 F. Supp. 845, 847 (W.D. Mo. 1984); *Valdez v. City of Farmington*, 580 F. Supp. 19, 20-21 (D.N.M. 1984); *Anderson v. Local Union No. 3*, 582 F. Supp. 627, 631 (S.D.N.Y. 1984); *Melson v. Kroger Co.*, 578 F. Supp. 691, 696 n.3 (S. D. Ohio 1983). *But see Alexander v. Hargrove*, 1994 WL 444728 (Aug. 16, 1994, E.D. Pa.); *Hoffman v. McNamara*, 688 F. Supp. 830, 834 (D. Conn. 1988) (allowing setoff for settlement in § 1983 action); *Fishman v. DeMeo*, 604 F. Supp. 873, 877 (E.D. Pa. 1985) (holding that contribution is available in § 1983 cases). Cases from district courts in the Third Circuit, however, are not a clear guide because their analysis adds a layer of complexity concerning the degree to which *Miller* was overruled by the Supreme Court cases in *Northwest Airlines* and *Texas Industries*. This court does not face that obstacle as *Miller* is not binding precedent here.

Applying *Northwest Airlines*, the court finds no express language in § 1983 for a right of contribution. The court must consider, then, whether such a right can be implied from the statute. No party has pointed the court to any discussion in the legislative history of § 1983

_____

*Miller* had relied on the reasoning set forth in *Glus*.

9

that would indicate that Congress considered whether a right of contribution was available to defendants in a § 1983 action.   Significantly, it is also clear that § 1983 was not adopted to benefit participants in a scheme to deprive an individual of his constitutional rights, as Defendants here are alleged to have done.   Rather, § 1983 was enacted to benefit the class of individuals who have suffered constitutional injuries.   Thus, the court finds that there is no express or implied right to contribution for these Defendants in § 1983 itself.

The court must next consider whether contribution can find a source in federal common law.   As the Supreme Court noted in *Northwest Airlines* and *Texas Industries*, federal common law is a narrow field.   In *Texas Industries*, the Court held that "contribution among antitrust wrongdoers does not involve the duties of the Federal Government, the distribution of powers in our federal system, or matters necessarily subject to federal control even in the absence of statutory authority" and, thus, not in the category of issues generally subject to federal common law.   451 U.S. at 642.   Furthermore, even though the Supreme Court had previously recognized that Congress intended for the courts to "give shape" to the Sherman Act's "broad mandate by drawing on common-law tradition," the Court nonetheless determined that Congress did not intend for the courts to provide the remedy of a right of contribution in antitrust actions under federal common law.   *Id.* at 643-44.   A similar analysis would seem to apply to § 1983.

Defendants, however, argue that the analysis should be different here because the underlying statute is § 1983, which provides a vehicle for raising constitutional injuries, a

10

statute different in nature than Title VII or the Sherman Act.  The court does not agree. *Northwest Airlines* and *Texas Industries* are strong indications from the Supreme Court that only under the most narrow and specific of circumstances could a federal common law right to contribution be found.  Defendants have not provided any argument as to why the reasoning of *Northwest Airlines* and *Texas Industries* would allow a theory of contribution in § 1983 pursuant to federal common law.

Defendants further contend that the broad statements in § 1988 allow a court leeway to fashion a federal common law remedy.  Section 1988 states:

> the jurisdiction in civil and criminal matters conferred on the district courts by the provisions of [the Civil War-era statutes], for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause.

*Id.*  Thus, it could be argued that § 1988 allows the court to consider state law in determining whether a right to contribution exists.  As the court discussed above in reviewing Plaintiff's complaint, Plaintiff alleges that Defendants intentionally schemed to cover up problems with the state crime laboratory's testing equipment.  In Georgia, however, there is no contribution among intentional tortfeasors.  *See Marchman & Sons, Inc. v. Nelson*, 251 Ga. 475, 476-77

11

(1983).  Thus, even if the court were to use § 1988 to consider either federal common law or state law, Defendants still have not shown the availability of an action for contribution.

In sum, the court finds that § 1983 does not expressly create a right to contribution. Because Defendants here are alleged to have committed a constitutional tort and not to have been victim to such a tort, the court also finds that there is no implied right to contribution under § 1983.  The court concludes that there is no right to contribution under § 1983 through federal common law.  Finally, if § 1988 permits the court to consider state law contribution, here, Georgia does not permit such contribution for intentional torts.  For the foregoing reasons, the court finds there is no right to contribution and GRANTS Third-Party Defendant Hollstrom's motion to dismiss [18-1].

**III.     Conclusion**

The court GRANTS Third-Party Defendant Jennifer Hollstrom's motion to dismiss [18-1].


**IT IS SO ORDERED** this 23rd day of March 2006.


_____s/ J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

12